IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| VICTORIA COLLINS, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | 1:20-cv-1538 (LMB/MSN) |
| ) | |
| FAIRFAX COUNTY SCHOOL BOARD, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Before the Court is defendant Fairfax County School Board's ("defendant") Motion to Dismiss Amended Complaint ("Motion to Dismiss"). [Dkt. No. 21]. The motion has been fully briefed, and the Court finds that oral argument will not assist the decisional process. For the reasons that follow, the Motion to Dismiss will be granted.

I.

Pro se plaintiff Victoria Collins ("plaintiff") was first employed by defendant as a special education teacher between August of 2010 and June of 2015, when she left her employment in good standing. On August 30, 2018, she began her second period of employment with defendant, as a teacher at Daniels Run Elementary School. [Dkt. No. 19] at ¶¶ 1, 34. Plaintiff alleges that while she was working at that school, "she was consistently harassed, mistreated and retaliated against by four of the five administrators" based on her race (African American and Latina) and her gender. Id. at ¶ 35. Specifically, plaintiff alleges that on November 19, 2018, she "was physically touched in an unwelcome and untoward manner by one of the interim assistant principals at Daniels Run [E]lementary [S]chool in a classroom with one assistant and students present." Id. at ¶ 39. Plaintiff further alleges that on November 26, 2018, "the interim

administrator again came into [her] classroom with no eyewitnesses present," even though he had been told that "she did not feel comfortable being alone with him under any circumstances." Id. at ¶ 41. He came into plaintiff's "desk area" after she asked him to stay in another part of the classroom, and "began to mock" plaintiff by asking her, "[O]h, why won't you talk to me Victoria[?]" Id. She asked him repeatedly to leave, and he responded by "laugh[ing] in her face." Id.

Plaintiff alleges that she reported these incidents to the assistant superintendent of human resources in November and December of 2018. [Dkt. No. 19] at ¶ 40. Although she sought a transfer away from Daniels Run Elementary School, plaintiff "was blocked from transferring to another school by the previous interim principal after she made several complaints to him for not following up or taking appropriate actions to effectively stop" the harassment by the interim assistant principal. Id. at ¶ 42. On December 2, 2018, plaintiff reported to the "regional manager" of Daniels Run Elementary School that "the lack of structure, accountability and oversight at [the school] [were] allowing the interim administrators to engage in gender harassment and discrimination towards her." Id. at 43. The regional manager told plaintiff that "the circumstances at Daniels Run were an extenuating circumstance and that a team was working diligently on hiring a permanent principal"; however, he did not grant plaintiff a transfer to another school. Id.

The Complaint alleges that on January 22, 2019, school administrators retaliated against plaintiff for reporting the harassment by giving her "an observational report filled with stark fabrication and the deliberate falsification of facts with an intent to harm by the Assistant Principal who was friends with the interim administrator that the plaintiff had reported." [Dkt. No. 19] at ¶ 44. On January 24, 2019, plaintiff met with the new principal of Daniels Run

2

Elementary School, again expressing her concerns and requesting a transfer. Her request was denied on January 28, 2019. Id. at ¶ 45. Plaintiff alleges that on that same day, she was given "a 'do not reappoint' for next school year" performance rating, and that the new principal told her that she could have received a different rating "if [she] had not expressed [her] concern regarding leaving Daniels Run." Id. at ¶ 46. In February of 2019, plaintiff's request for a transfer out of Daniels Run Elementary School was granted when she was reassigned to a non-classroom position with the Office of Talent and Acquisition Management. Id. at ¶¶ 2-3, 12, 47.

According to the Complaint, plaintiff filed an EEOC charge for race and sex discrimination and retaliation on February 1, 2019, and filed a second EEOC charge for discrimination and retaliation on November 22, 2019.[1] [Dkt. No. 19] at ¶ 9. In an apparent effort to resolve the tensions between plaintiff and the Daniels Run Elementary School administration, plaintiff and representatives for defendant attended a mediation "regarding the prior charge" on June 10, 2019. [Dkt. No. 1] at ¶ 12. At the mediation, defendant offered plaintiff "a one year only job in the temporary assignment in which she was placed after being transferred from the classroom environment in February 2019." Id. Plaintiff rejected the offer, and the parties did not come to an agreement during the mediation. As a result, defendant prepared to dismiss plaintiff for "incompetence and dereliction of duty." Although plaintiff contested defendant's finding that she was incompetent, she "did not contest the dismissal as the leadership of the organization and school board failed to prevent gender-based harassment, discrimination, and retaliation towards plaintiff due to her gender and racial background." Id. at ¶ 14.

---

[1] Plaintiff has not alleged that she received a right to sue letter following her second EEOC charge. As a result, it is unclear from the record before the Court whether plaintiff's lawsuit was timely filed.

3

On June 12, 2019, two days after the mediation, "the assistant superintendent for human resources informed the plaintiff via an emailed letter that [defendant] was rescinding the termination," explaining that plaintiff had raised new claims of harassment that had not been previously investigated, although plaintiff denies that she had raised any additional allegations, aside from those that had already been brought to defendant's attention. [Dkt. No. 19] at ¶¶ 15-16. The assistant superintendent informed plaintiff that because her termination was rescinded, if she were to resign after June 15, 2019, it would be "a resign [sic] with prejudice." Id. at ¶ 17. Plaintiff alleges that she "informed the leadership that this action consisted of retaliation as three days was not nearly enough time for [her] to seek legal counsel regarding this matter as … resigning with prejudice … would have prevented the plaintiff from seeking employment in any other school district." Id. Plaintiff chose not to resign before June 15, 2019.

In mid-July of 2019, defendant provided plaintiff with an employment contract, which identified the same job assignment that she had occupied after she was transferred out of the classroom in February of 2019. [Dkt. No. 19] at ¶ 18. Plaintiff assumed that because the contract identified that job assignment, she would be occupying the same position, and based on that assumption she signed the contract. Id. at 19. On August 5, 2019, the EEOC issued a right to sue letter. Within two weeks of the issuance of the right to sue letter, defendant transferred plaintiff to a different position than the one which was identified in the July 2019 contract. Id. at ¶ 20. The Complaint does not disclose what or where the new position was, other than describing it as work in a kindergarten classroom, even though plaintiff had previously "taught eight years as a middle school teacher." Id. at ¶ 53. Plaintiff alleges that the location of her new position made it impossible for her to pick up her own child from school, and that as a result her "child was left at

4

the bus stop on occasions with no adult supervision and placed in yet another hostile environment." Id. at ¶ 21.

Plaintiff "informed the superintendent and other relevant leadership members of the school system regarding what happened to her child," but representatives from defendant did not immediately respond to her concerns. [Dkt. No. 19] at ¶ 22. She again emailed "relevant leadership parties" about the situation, and on August 30, 2019 she was placed on administrative leave "and told that an objective investigation would commence." Id. at ¶ 23. Defendant hired an investigator to look into plaintiff's complaints, and on November 15, 2019, the investigator "absolved the defendant of any wrongdoing[ ]." Id. at ¶ 23. In written findings, the investigator determined that "the school system took no adverse action towards the plaintiff and the person who was responsible for the placement was unaware that the plaintiff had engaged in any protected activity." Id. In the Complaint, plaintiff alleges that this finding was inaccurate, because the individual responsible for her transfer—her direct supervisor—was aware of the June 10, 2019 mediation, and of "the fact that [plaintiff] had a child and the harm that would commence to the child." Id. at ¶¶ 23-24.

On November 21, 2019, after the internal investigation was completed, defendant sent plaintiff a letter requiring her to return to work in the kindergarten teaching position to which she had been assigned for the school year. Plaintiff has not alleged that she experienced any harassment while working in the kindergarten classroom to which she had been assigned; however, she alleges that this "return to work" letter constituted a "constructive discharge," because it required her to return to a position:

> for which the plaintiff had consistently informed the respondent that she was unable to work due to the retaliation she received by the timing (temporal proximity) of the position and the resultant harm to her child in addition to the fact that the

> charging party also experienced significant retaliation, gender based harassment and discrimination showcased in the prior charge by the respondent.

[Dkt. No. 19] at ¶ 55.[2]

Plaintiff filed this civil action on December 15, 2020. After defendant filed a motion to dismiss the original complaint, plaintiff sought, and was granted, permission to file an Amended Complaint. In the Order granting leave to amend, the Court explained:

> [D]efendant has argued that the original complaint does not plead any facts that tend to show that the adverse employment actions plaintiff alleges were motivated by her race or gender, or were made in retaliation for her previous protected activity. Although plaintiff need not prove the facts she alleges with affidavits or exhibits, she must allege those facts with specificity, instead of merely stating the legal conclusion that defendant discriminated or retaliated against her.

[Dkt. No. 18] at 1. Plaintiff filed her Amended Complaint on April 12, 2021, alleging a single count of "Retaliation Discrimination in Violation of Title VII of the Civil Rights Act of 1964,"[3] [Dkt. No. 19] at 20, and defendant has moved to dismiss for failure to state a claim.

II.

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint when a "plaintiff's allegations fail to state a claim upon which relief can be granted." Adams v. NaphCare, Inc., 244 F. Supp. 3d 546, 548 (E.D. Va. 2017). As defendant properly argues, a complaint must be more than speculative, and must "state a claim to relief that is plausible on its

---

[2] It is unclear from the Amended Complaint whether plaintiff returned to work in the kindergarten classroom or whether she resigned; however, the use of the term "constructive discharge" suggests that she resigned. That outcome is further suggested by the two lawsuits plaintiff has filed in this court against the Commissioner of the Virginia Employment Commission, seeking unemployment benefits. See Collins v. Hess, 1:21-cv-692; Collins v. Hess, 1:21-cv-750.

[3] It is not clear whether plaintiff intended to assert a single claim for retaliation, or claims for retaliation and discrimination. To read the complaint broadly in light of plaintiff's pro se status, the Court will consider claims for both retaliation and discrimination—the two claims which plaintiff has alleged were administratively exhausted. [Dkt. No. 19] at ¶ 9.

6

face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal quotation marks and citations omitted). When considering a motion to dismiss, a court must assume that the facts alleged in the complaint are true and resolve factual disputes in the plaintiff's favor, Robinson v. Am. Honda Motor Co., 551 F.3d 218, 222 (4th Cir. 2009); however, a court "is not bound by the complaint's legal conclusions," conclusory allegations, or unwarranted inferences. Id. Courts must "construe allegations in a pro se complaint liberally." Thomas v. Salvation Army So. Territory, 841 F.3d 632, 637 (4th Cir. 2016).

To plead a claim of discrimination under Title VII, a plaintiff must allege that "(1) [s]he is a member of a protected class; (2) [s]he suffered adverse employment action; (3) [s]he was performing [her] job duties at a level that met [her] employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class." Holland v. Washington Homes, Inc., 487 F.3d 208, 214 (4th Cir. 2007). To plead a claim of retaliation, a plaintiff must allege 1) that she engaged in a protected activity, 2) that her employer took an adverse action against her, and 3) that there was a causal relationship between the protected activity and the adverse employment action. Foster v. Univ. of Maryland-Eastern Shore, 787 F.3d 243, 250 (4th Cir. 2015).

Defendant primarily argues that the Amended Complaint must be dismissed because it does not plausibly allege an adverse employment action. [Dkt. No. 23] at 3-4. In her brief in opposition to the Motion to Dismiss, plaintiff argues that she has pleaded an adverse employment action which she describes as defendant's "informing and transferring the plaintiffs

7

[sic] position on the day in which she was to begin her contract." [Dkt. No. 25] at 3. In the Fourth Circuit, an adverse employment action is "a discriminatory act which adversely affects the terms, conditions, or benefits of the plaintiff's employment." James v. Booz-Allen & Hamilton, 368 F.3d 371, 375 (4th Cir. 2004) (internal citations and quotation marks omitted). The Amended Complaint alleges two ways in which plaintiff's August 2019 transfer affected her: the transfer placed her in a kindergarten rather than a middle school classroom, and it made it more difficult for her to pick up her child from the bus stop after school. [Dkt. No. 19] at ¶ 53. There are no allegations which would support a finding that teaching kindergarten students instead of middle school students changed the conditions of plaintiff's employment sufficiently to constitute an adverse employment action. Moreover, although plaintiff claims that this arrangement "set [her] up for failure" because she had "taught eight years as a middle school teacher," plaintiff repeatedly alleged that her most recent classroom position had been in an elementary school (Daniels Run), not a middle school. Id. Nor does the effect of plaintiff's transfer on her ability to pick up her son satisfy the Fourth Circuit's criteria for an adverse employment action. Although the transfer undoubtedly made the logistics of plaintiff's personal life more difficult, the location of her teaching assignment within the same school district in relation to her son's bus stop is not a "term[ ], condition[ ], or benefit[ ] of the plaintiff's employment." James, 368 F.3d at 375 (emphasis added). Because plaintiff has not alleged facts that make out a plausible claim of an adverse employment action—even after defendant's original motion to dismiss and the order granting her leave to file an amended complaint explained that such facts needed to be pleaded—the Amended Complaint fails to allege cognizable claims for retaliation or discrimination.

Defendant argues in its Motion to Dismiss that "the only adverse action specifically alleged is [the] new job assignment" plaintiff received in August of 2019, [Dkt. No. 23] at 4, and in her opposition brief, plaintiff accepts that characterization.[4] Even if the Court were to consider the Amended Complaint's description of other actions by defendant, none would fall under the Fourth Circuit's definition of "adverse employment actions." For instance, plaintiff alleges that the administration at Daniels Run Elementary School retaliated against her by refusing to transfer her from the school. [Dkt. No. 19] at ¶ 40. Refusing to transfer someone out of the position for which they have been hired does not constitute an adverse employment action. Moreover, plaintiff was actually transferred out of Daniels Run Elementary School within two months of requesting a transfer. Likewise, plaintiff's allegations that she received a negative observation report and a "do not reappoint" performance rating do not save her claims, because in the Fourth Circuit, a performance evaluation is considered an adverse employment action only where "the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment." James, 368 F.3d at 377 (internal citation omitted). There is no allegation that defendant used the negative performance evaluations in that way; instead, the Amended Complaint alleges that defendant did go on to reappoint plaintiff to a teaching position, despite giving her the "do not reappoint" rating.

For all the reasons previously discussed, the Court finds that plaintiff has not pleaded the adverse employment action element of a retaliation or discrimination claim, on which ground the

---

[4] Specifically, when identifying what adverse action she intended to plead in the Complaint, plaintiff explained that: "The amended complaint that the plaintiff has submitted to the court details the materially adverse actions of the defendant to the plaintiff informing and transferring the plaintiffs [sic] position on the day in which [sic] she was to begin her contract, the retaliation and harm involved in such an action, the suspicious timing (temporal proximity), constructive discharge, etc." [Dkt. No. 25] at 3.

Amended Complaint must be dismissed. Even if she had, the Amended Complaint cannot survive defendant's motion to dismiss because she has not properly pleaded that defendant's actions were motivated by racial or gender discrimination, or retaliatory animus. See e.g., McCleary-Evans v. Maryland Dep't Transp., State Highway Admin., 780 F.3d 582, 583 (4th Cir. 2015) (dismissing race discrimination claim where plaintiff "failed to include adequate factual allegations to support a claim that the [employer] discriminated against her because she was African American") (emphasis in original); Laber v. Harvey, 438 F.3d 404, 432 (4th Cir. 2006) (holding that retaliation requires "a causal link"). There are simply no allegations in the Amended Complaint that anyone responsible for plaintiff's August 2019 job transfer, for the previous decisions not to transfer her immediately, or for giving her negative performance ratings was motivated by race or gender discrimination, other than plaintiff's conclusory references to "her status as a minority female." See, e.g., [Dkt. No. 19] at ¶ 37.[5]

Similarly, the Amended Complaint does not adequately allege that plaintiff's August 2019 transfer was motivated by retaliatory animus. Two months passed between the unsuccessful mediation and plaintiff's reassignment, but during those two months, defendant specifically made the decision not to terminate plaintiff's employment and instead to keep her on staff. That decision benefited plaintiff, and undermines any inference of causation based on temporal proximity. See Perry v. Kappos, 489 F. App'x 637, 643 (4th Cir. 2012) (finding that an "adverse

---

[5] Plaintiff's only attempt to show race-based discrimination is a vague reference to an unnamed white coworker. Specifically, the Amended Complaint alleges that although plaintiff was forced to "remain at Daniels Run [E]lementary [S]chool to endure gender harassment, discrimination and retaliation ... The plaintiff's co-worker who was white left shortly after the plaintiff left with quicker expediency." [Dkt. No. 19] at ¶ 37. That allegation does not establish an appropriate comparator, because there are no details about why that employee left. Did the coworker resign? Had the coworker requested a transfer? Without any details, this bald statement is not enough to make a plausible claim of discrimination.

employment decision" must "follow[ ] ... protected activity 'very closely'" to establish causation through temporal proximity) (quoting Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001)).

In its Order granting plaintiff leave to amend her complaint, the Court explained that: "[D]efendant has argued that the original complaint does not plead any facts that tend to show that the adverse employment actions plaintiff alleges were motivated by her race or gender, or were made in retaliation for her previous protected activity." [Dkt. No. 18]. Even after defendant and the Court put plaintiff on notice of the deficiencies in her Complaint, the Amended Complaint does not plausibly allege two essential elements of Title VII violations: an adverse employment action and causation.[6]

### III.

For these reasons, defendant's Motion to Dismiss will be granted and judgment will be entered in favor of defendant by an Order to be issued with this Memorandum Opinion.

Entered this 30 day of June, 2021.

Alexandria, Virginia

/s/ 
Leonie M. Brinkema
United States District Judge

---

[6] The Amended Complaint also fails to allege that plaintiff was performing her job duties at a level meeting her employer's legitimate expectations, which is an additional required element of a Title VII claim of gender- or race-based discrimination.